IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| LAURA MAIETTA and WESLEY WILSON III<br><br>v.<br><br>C.R. BARD, INC. et al. | CIVIL ACTION<br><br>NO. 19-4170 |
|---|---|

### MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                                                                   August 19, 2022

### I.  Introduction

Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. have filed a Motion for Summary Judgment (ECF 66, 67, 68) in this case arising from allegedly defective medical technology. Plaintiffs Laura Maietta and Wesley Wilson III bring a wide array of state law claims against Defendants. For the reasons that follow, the Court will deny in part and grant in part Defendants' Motion.

### II. Background and Procedural History

The facts of this case, considered in the light most favorable to the nonmoving party, are as follows. Following a serious car accident in 2003, Plaintiff Laura Maietta was implanted with the Bard Recovery Filter, an intravascular (IVC) filter manufactured by Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard"). The filter, which was implanted by Dr. Bartholomew Tortella, was intended to prevent Maietta from suffering a pulmonary embolism. (MSJ, Statement of Material Facts ¶¶ 14–15.)

In 2016, after experiencing back pain, Maietta was medically examined. She learned that the Bard filter had broken, with one of the filter's struts fracturing. Maietta underwent surgery to

1

have the filter removed.  Although most of the filter was successfully removed, the operating doctors were unable to remove the fractured strut.  (Id. ¶¶ 61–69.)

Maietta again experienced medical difficulty in 2018, when she was hospitalized for an infection in her spine.  Concerned that the remnant of the broken Bard filter might be the cause of the infection, Maietta consulted with doctors about possibly removing the fractured strut.  Maietta was advised, however, that attempting to remove the strut would be risky, and the strut was left in. (Id. ¶¶ 70–75.)

The parties strongly dispute the source of Maietta's pain and infection.  Plaintiffs contend that the Bard filter was responsible for Maietta's medical troubles.  (MSJ Resp. Br. 2–3.)  By contrast, Defendants argue that the Bard filter had no relation whatsoever to the medical problems that Maietta experienced.  (MSJ Br. 2–3.)

Following her initial back pain in 2016, Maietta joined her husband, Plaintiff Wesley Wilson III, to bring suit against Bard.  Maietta and Wilson's case was transferred under 28 U.S.C. § 1407 to an already existing multidistrict litigation in the District of Arizona, which consolidated thousands of cases concerning allegedly defective IVC filters manufactured by Bard.  See In re Bard IVC Filters Prod. Liab. Litig., No. MDL 15-02641-PHX-DGC, 2019 WL 3928657, at *1 (D. Ariz. Aug. 20, 2019).  After substantial discovery, the case was transferred back to this Court in 2019, and some pretrial litigation continued.

In their Complaint (ECF 1), Plaintiffs brought fifteen claims, some of which have been withdrawn and are not listed:

1. **Count II**: Information defect;
2. **Count III**: Design defect;
3. **Count IV**: Negligence in designing the product;

4. **Count VII**: Negligence by failing to warn;

5. **Count VIII**: Negligent misrepresentation;

6. **Count XII**: Fraudulent misrepresentation;

7. **Count XIII**: Fraudulent concealment;

8. **Count XV**: Loss of consortium.

Defendants move for summary judgment on all of Plaintiffs' remaining claims. Defendants also move for summary judgment on the issue of whether Plaintiffs may be awarded punitive damages, which they request in their Complaint. Plaintiffs filed a Response (ECF 79, 80), and Defendants filed a Reply (ECF 93).

The Court held oral argument on the Motion on August 18, 2022. Counsel were well-prepared and clear in answering questions about the legal arguments made in the briefs, which the Court will address in turn. Counsel also provided the Court with helpful details about the outcomes of similar cases against Bard in the Eastern District.

**III.    Legal Standard**

Summary judgment should be granted if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a factual dispute "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. A grant of summary judgment is appropriate only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In deciding a motion for summary judgment, courts are obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015). The moving party must inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's burden at the summary judgment stage can be met by simply pointing out to the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—that demonstrate the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

## IV. Discussion

### a. Causation

Defendants first argue broadly that no reasonable jury could find that the Bard filter caused Maietta's alleged injuries. Defendants contend that, based on this lack of causation, the Court should grant summary judgment against Plaintiffs on all claims. (MSJ Br. 15.)

The Court rejects Defendants' argument. Plaintiffs present significant expert testimony, specific to Maietta's case, from Dr. Darren Hurst, an interventional radiologist (MSJ Resp., Opposing Statement of Material Facts, Ex. 27 at 69–70, 90–94); Dr. John Schaefer, an infectious disease expert (MSJ Resp., OSMF, Ex. 48 at 220–24); and Dr. Derek Muehrcke, a cardiothoracic surgeon (MSJ Resp., OSMF, Ex. 29 at 58–60, 70–71). This testimony supports Plaintiffs' position that the Bard filter physically injured Maietta.

Defendants counter that Plaintiffs' experts "only . . . state all filters have certain complications, some of which Maietta suffered here, and then make the leap in logic that because Maietta is claiming an injury here, it must be due to a defect in the Filter." (MSJ Br. 12.) But even accepting, arguendo, this characterization of the relevant expert testimony, a reasonable jury may well infer that the Bard filter caused Maieta's injuries based on evidence that

1. Maietta suffered particular injuries;

2. Those injuries can be caused by IVC filters; and

3. The Bard filter was the particular IVC filter inserted in Maietta.

The Court will therefore deny summary judgment on the basis of lack of causation.

### b. Strict Liability Claims

#### i. Applicable Law

Counts II and III of Plaintiffs' Complaint, alleging information and design defects, are strict liability claims. "Strict liability allows a plaintiff to recover where a product in 'a defective condition unreasonably dangerous to the user or consumer' causes harm to the plaintiff." Phillips v. A-Best Prod. Co., 665 A.2d 1167, 1170 (Pa. 1995) (quoting Restatement (Second) of Torts § 402A (Am. L. Inst. 1965)). Section 402A of the Restatement (Second) of Torts governs strict liability claims. Tincher v. Omega Flex, Inc., 104 A.3d 328, 359 (Pa. 2014).

Of particular significance to this case is comment k of Section 402A. "Comment k, titled 'Unavoidably unsafe products,' denies application of strict liability to products such as prescription drugs, which, although dangerous in that they are not without medical risks, are not deemed defective and unreasonably dangerous when marketed with proper warnings." Hahn v. Richter, 673 A.2d 888, 889–90 (Pa. 1996). In Hahn, the Pennsylvania Supreme Court applied comment k to bar strict liability claims based on prescription medical drugs. Hahn, 673 A.2d at 891; see also

5

Lance v. Wyeth, 85 A.3d 434, 453 (Pa. 2014) ("[F]or policy reasons this Court has declined to extend strict liability into the prescription drug arena."). However, the Pennsylvania Supreme Court has not specifically addressed the application of comment k to strict liability claims based on medical devices. "In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide this case." Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 45–46 (3d Cir. 2009).

### ii. Analysis

The parties raise two distinct questions. The first is a broad question of whether comment k categorically bars strict liability claims based on medical devices. Defendants contend that medical devices are analogous to prescription medical drugs, and that this Court should accordingly find that comment k categorically bars strict liability claims based on medical devices. (MSJ Br. 16–17.)

The second question is a narrower one of whether comment k bars strict liability claims based specifically on the Bard filter at issue in the present case. Defendants contend that, even if application of comment k to medical devices must be determined on a case-by-case rather than categorical basis, the Bard filter nonetheless qualifies as an "unavoidably unsafe product" that falls within the ambit of comment k. (Id. at 17–18.)

### 1. Categorical Application of Comment K

In support of their position that comment k categorically applies to medical devices, Defendants cite the Pennsylvania Superior Court's decision in Creazzo v. Medtronic, Inc., in which the court could "find no reason why the same rational applicable to prescription drugs may not be applied to medical devices." 903 A.2d 24, 31 (Pa. Super. Ct. 2006). But this brief remark by an intermediate appellate court is far from dispositive. As the undersigned found in a previous case

6

involving similar strict liability claims, "the Pennsylvania Supreme Court has strongly discouraged Pennsylvania courts from carving out certain categories of products for special treatment within the common law of products liability." Gross v. Coloplast Corp., 434 F. Supp. 3d 245, 251 (E.D. Pa. 2020) (Baylson, J.); see Tincher v. Omega Flex, Inc., 104 A.3d 328, 396 (Pa. 2014) ("Courts, which address evidence and arguments in individual cases, are neither positioned, nor resourced, to make the kind of policy judgments required to arrive at an a priori decision as to which . . . categories and types of products, should be exempt."). The Pennsylvania Supreme Court has also cautioned that it "applied a rather one-dimensional analysis in its adoption of a blanket approach to comment k," and that "the truncated analysis in the Hahn line offers a poor foundation for extrapolation." Lance, 85 A.3d at 452 n.21.

In light of this guidance, I conclude the Pennsylvania Supreme Court would likely decline to categorically apply comment k to medical devices. The decision is not clear-cut; I agree with two other judges in the Eastern District "that the plain language of comment k, which focuses on products which cannot be legally sold except to physicians or with a physician's prescription, further suggests that 'no meaningful distinction can be drawn between prescription drugs and prescription medical devices.'" Keen v. C.R. Bard, Inc., 480 F. Supp. 3d 624, 635 (E.D. Pa. 2020) (Pratter, J.) (quoting Rosenberg v. C.R. Bard, Inc., 387 F. Supp. 3d 572, 577 (E.D. Pa. 2019) (Robreno, J.) (both concluding that prescription medical devices are categorically exempt from strict liability).

However, the Pennsylvania Supreme Court's evident disfavor for categorical applications of comment k, which it has expressed in cases more recent than Hahn, compels this Court to conclude that the Pennsylvania Supreme Court would likely opt for a case-by-case determination

7

of whether comment k applies to a given medical device.[1]  See Ebert v. C.R. Bard, Inc., 459 F. Supp. 3d 637, 652 (E.D. Pa. 2020) (Pappert, J.) (concluding that prescription medical devices are not categorically exempt from strict liability and require a case-by-case determination).

### 2. Individualized Application of Comment K

Because comment k does not apply to the Bard filter based on the filter's general status as a medical device, the Court must consider whether comment k nonetheless applies to the Bard filter based on the filter's particular characteristics.  Defendants cite a 1996 FDA memorandum ("Price Memo") that discusses the unavoidable risks of IVC filters (MSJ, SMF, Ex. 1), as well as deposition testimony by Dr. Tortella to the same effect (MSJ, SMF, Ex. 4 at 29–30).  Plaintiffs present little challenge to this evidence, only noting briefly that safer alternatives to the Bard filter exist.  (MSJ Resp. Br. 15.)

The Court finds that there is no genuine dispute of material fact regarding whether the Bard filter is an unavoidably dangerous product.  The Price Memo plainly recognizes the "well characterized" risks of IVC filters, which include fracture, migration, tilt, and perforation (MSJ, SMF, Ex. 1 at 68–71), and Plaintiffs present no evidence to dispute the significance of these risks. I will join two other judges in this District in finding that the Bard filter falls into the category of products "which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use," just like "drugs, vaccines, and the like" that "cannot legally be sold except to physicians, or under the prescription of a physician." Restatement (Second) of Torts § 402A (Am. L. Inst. 1965); see Ebert, 459 F. Supp. at 653 ("Based on the evidence, the

---

[1] At oral argument, Plaintiff's counsel drew the Court's attention to a recent opinion by another judge in this District that drew distinctions between medical drugs and medical devices.  Cf. Spear v. Atrium Medical Corp., No. 22-CV-876, 2022 WL 3357485, at *2 (E.D. Pa. Aug. 12, 2022) (McHugh, J.) (denying a Rule 12(b)(6) motion to dismiss and contrasting "drugs [that] are comprised of biologics meant to interact with and have an effect upon human tissue" with "medical devices, [that] at least before implantation, are inert").

Court concludes that the Bard G2 filter is an 'unavoidably unsafe product,' such that the Pennsylvania Supreme Court would apply comment k to the filter, thereby shielding Bard from a strict liability claim."); accord Keen, 480 F. Supp. 3d at 637.

The Court will therefore grant summary judgment to Defendants on Plaintiffs' strict liability claims.

### c. Negligent Design

#### i. Applicable Law

"To prevail in a negligence action, a plaintiff 'must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage.'" Berrier, 563 F.3d at 61 (quoting Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003).

The Pennsylvania Supreme Court has held that "[u]nder Pennsylvania law, pharmaceutical companies violate their duty of care if they introduce a drug into the marketplace, or continue a previous tender, with actual or constructive knowledge that the drug is too harmful to be used by anyone." Lance, 85 A.3d at 461; accord Ebert, 459 F. Supp. at 644; Keen, 480 F. Supp. 3d at 638 (applying this standard to medical devices).

#### ii. Analysis

Defendants assert that Plaintiffs cannot show that the Bard filter was too harmful to be used by anyone, emphasizing that no regulatory body or medical body has taken this position. (MSJ Br. 22.) As an initial matter, "[t]he Court is unaware of any instruction from the Pennsylvania Supreme Court that a device can only be 'too harmful to be used by anyone' if so decreed by a regulatory body or medical society.'" Keen, 480 F. Supp. 3d at 640. It is the duty of a jury to determine how to weigh that particular evidence, and Defense counsel clarified at oral argument

9

that this is merely a fact favoring Defendants' position rather than a requirement for a plaintiff to prevail.

The Court further finds that Plaintiffs have produced sufficient evidence to sustain their negligent design claim. Plaintiffs cite deposition testimony by Dr. Robert McMeeking, an expert in engineering and materials science, that the Bard filter was designed such that it was likely to "cause serious complications that create significant risks for the patient"—risks that could have been feasibly reduced. (MSJ Resp., OSMF, Ex. 44 at 91–92.) Dr. McMeeking also testified in his deposition that Bard did not adequately test the filter (id. at 129–50), which may support a jury finding that Bard had actual or constructive knowledge that the Bard filter was too dangerous to be used by anyone. Plaintiffs also cite deposition testimony from Dr Hurst that Bard failed to test the filter properly and that Bard's preliminary trial showed unexpected migrations and fractures. (MSJ Resp., OSMF, Ex. 27 at 77.)

The Court concludes that Plaintiffs have mustered sufficient evidence for a reasonable jury to find in their favor on the negligent design claim. The Court will therefore deny summary judgment on this claim.

### iii. Negligent Failure to Warn

#### 1. Applicable Law

"Under Pennsylvania law and what is known as the learned intermediary doctrine, 'a medical device manufacturer has a duty to warn implanting physicians about the dangers of a medical device, but has no duty to warn patients directly." Keen, 480 F. Supp. 3d at 640–41 (quoting McLaughlin v. Bayer Corp., 172 F. Supp. 3d 804, 831 (E.D. Pa. 2016) (Padova, J)); see also Lance, 85 A.3d at 442 (noting "this Court's adoption of the learned intermediary doctrine"). In a negligent failure to warn case in which the learned intermediary doctrine applies, "the issue

10

to be determined is whether the warning, if any, that was given to the prescribing physicians was proper and adequate." Daniel v. Wyeth Pharms., Inc., 15 A.3d 909, 924 (Pa. 2011).

"In order to be deemed adequate as a matter of law, a warning 'must (1) accurately and unambiguously convey the scope and nature of the risk, and (2) state the risk with sufficient specificity.'" Keen, 480 F. Supp. 3d at 641 (quoting Schrecengost v. Coloplast Corp., 425 F. Supp. 3d 448, 462 (W.D. Pa. 2019)). However, "where fact questions exist (e.g., regarding the sufficiency of the warning for a particular risk identified in the label and whether the warning was diluted by marketing representations), the question of adequacy is one for the jury." In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig., 817 F. Supp. 2d 535, 545–46 (E.D. Pa. 2011) (Rufe, J.).

2. Analysis

a. Adequacy of Warning

Defendants aver that the Instructions for Use (IFU) accompanying the Bard filter stated that the filter's "potential complications" included migration of the filter, perforation of the vena cava wall, and caval occlusion. (MSJ Br. 19.) Because the alleged source of Maietta's injury was filter migration, argue Defendants, Bard provided adequate warning to Maietta's prescribing physician, Dr. Tortella. (Id.)

Plaintiffs counter that, at the time the Bard filter was implanted in Maietta, the IFU did not warn about migration when the filter had been "properly positioned" in patients with a normally sized vena cava, did not warn about risk of infection from implantation of a foreign body, did not warn about fracture, and did not warn about the relationship between indwell time and increased risk of filter failure. Moreover, submit Plaintiffs, the IFU did not warn about the frequency of these complications. Plaintiffs conclude that the IFU failed to adequately warn Dr. Tortella of the

11

complications that Maietta allegedly experienced: fracture, infection, and the filter becoming an inoperable foreign body. (MSJ Resp. Br. 17–18.)

As other judges in this District presiding over similar actions against Bard have found, "[t]he parties' dispute over the sufficiency of the warning is a classic inquiry for the jury to decide." Keen, 480 F. Supp. 3d at 641. Underlying Plaintiffs' negligent failure to warn claim is a genuine factual dispute over the likelihood of particular complications occurring—a dispute that must be resolved to determine whether the warning was adequate. Plaintiffs cite expert deposition testimony by Dr. Hurst that the Bard filter's IFU did not accurately represent the likelihood of complications, such as those that Maietta allegedly experienced, occurring. (MSJ Resp., OSMF, Ex. 27 at 100–01, 105–06, 109–10.) Plaintiffs cite similar testimony by Dr. McMeeking suggesting that serious complications caused by the Bard filter were not just possible, but "likely." (MSJ Resp., OSMF, Ex. 44 at 91–92.) A reasonable jury may find, based on this testimony, that the IFU provided insufficient warning to Dr. Tortella.

### b. Causation of Warning

Defendants raise an additional argument that they are entitled to summary judgment on Plaintiffs' negligent failure to warn claim because no reasonable jury could find that a different warning would have altered Dr. Tortella's conduct. (MSJ Br. 20–21.) See Demmler v. SmithKline Beecham Corp., 671 A.2d 1151, 1155 (Pa. 1996) ("[P]laintiffs must further establish proximate causation by showing that had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." (citation omitted)).

The Court rejects Defendants' argument. Plaintiffs cite deposition testimony by Dr. Tortella that his decision to prescribe the implanted Bard filter would have been affected by knowledge of the unwarned-of risks that Plaintiffs allege. (MSJ Resp., OSMF, Ex. 9 at 63–70,

12

78–79, 93–96.)  Defendants counter that there is no evidence that Dr. Tortella actually read the IFU before prescribing the Bard filter, negating the significance of any inaccurate or misleading information it contained.  (MSJ Reply Br. 6–7.)  However, Plaintiffs cite deposition testimony by Dr. Tortella that, as a customary practice, he would have reviewed the IFU and used it as a teaching aid.  (MSJ Resp., OSMF, Ex. 9 at 54, 82.)  A reasonable jury may well find that Dr. Tortella would have acted differently had the information in the IFU been different.

For these reasons, the Court will deny summary judgment on Plaintiffs' negligent failure to warn claim.

### d. Misrepresentation and Concealment Claims

#### i. Applicable Law

Plaintiffs bring claims for negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment, all of which share similar elements.  To prevail on a claim for negligent misrepresentation, a plaintiff must establish "(1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation."  Gregg v. Ameriprise Fin., Inc., 245 A.3d 637, 646 (Pa. 2021).  To be found liable for negligent misrepresentation, "the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words."  Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999).

The elements of a fraudulent misrepresentation claim are almost exactly the same as the elements of a negligent misrepresentation claim.  "The difference between negligent misrepresentation and fraud in Pennsylvania is intent—in fraud, a statement must be made with actual knowledge or recklessness (rather than negligence) as to its falsity."  Chaborek v. Allstate

Fin. Servs., LLC, 254 F. Supp. 3d 748, 752 (E.D. Pa. 2017) (McHugh, J.) (citing Kit v. Mitchell, 771 A.2d 814, 819 (Pa. Super. Ct. 2001)).

Finally, "[t]he elements of fraudulent concealment are identical [to fraudulent misrepresentation] except that the wrongdoer intentionally conceals a material fact rather than making an affirmative misrepresentation." Manning v. Temple Univ., No. 03-4012, 2004 WL 3019230, at *10 (E.D. Pa. Dec. 30, 2004) (Bartle, J.) (citing Gibbs v. Ernst, 647 A.2d 882, 889 n.12 (Pa. 1994)).

### ii. Analysis

Defendants contend that Plaintiffs can neither establish that Bard made any false or misleading statement to them directly nor establish that they acted in reliance on any such statement. (MSJ Br. 24.) As in similar cases against Bard that were part of the same multidistrict litigation, "[t]hese arguments largely track the analysis already set forth in addressing the negligent failure-to-warn claim." Keen, 480 F. Supp. 3d at 645.

The Court finds that the factual disputes relevant to Plaintiffs' failure to warn claim are also relevant to Plaintiffs' misrepresentation and concealment claims. A jury that credits Dr. Tortella's and Dr. McMeeking's testimony may conclude that the allegedly inaccurate information in the IFU constitutes a misrepresentation or concealment that Dr. Tortella relied on in prescribing the Bard filter to Maietta. See id. at 646 ("[A] reasonable juror could conclude that Dr. Sacks relied on Bard to expressly disclose more accurate, detailed information than what was actually communicated to him about adverse events associated with the G2X filter. Therefore, the Court finds that [Plaintiff's] negligent misrepresentation claim survives summary judgment.").

Accordingly, the Court will deny summary judgment on Plaintiffs' claims for negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment.

### e. Loss of Consortium

"Loss of consortium is an injury referring to 'the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities.'" Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 777 (3d Cir. 2018) (quoting Darr Constr. Co. v. Workmen's Comp. Appeal Bd., 715 A.2d 1075, 1079–80 (Pa. 1998)). Although loss of consortium is "'a . . . distinct cause of action' for 'loss of services, society, and conjugal affection of one's spouse,' [it] is a claim 'derivative' of a spouse's separate claim of injury.'" Id. at 777–78 (quoting Darr, 715 A.2d at 1080).

Defendants submit that they are entitled to summary judgment because Plaintiffs' loss of consortium claim—which addresses alleged loss experienced by Wilson—is derivative of Plaintiffs' other claims, which address injuries to Maietta. Since all the claims addressing injuries to Maietta fail as a matter of law, posit Defendants, the loss of consortium claim must fail as a matter of law too.

As Defense counsel stated at oral argument, Defendants' argument relies on the Court granting summary judgment on all other claims in this case, leaving the loss of consortium claim without any separate claims from which to derive. As the Court is allowing some of Plaintiffs' other claims to proceed, it will allow Plaintiffs' loss of consortium claim to proceed as well.

### f. Punitive Damages

"[P]unitive damages . . . are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005). They "are an 'extreme remedy' available in only the most exceptional matters." Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005). Determining whether a defendant's conduct is sufficiently outrageous as to warrant an award of punitive damages is a role for the finder of fact, so "the Court should decide the viability of a

15

punitive damages claim 'only when no reasonable inference from the facts alleged supports a punitive award.'" Keen, 480 F. Supp. 3d at 646 (quoting Soufflas v. Zimmer, Inc., 474 F. Supp. 2d 737, 756 (E.D. Pa. 2007) (Robreno, J.)).

In the present case, there are genuine factual disputes that the Court has reviewed that bear on the question of whether Bard engaged in willful, wanton, or reckless conduct. These include the likelihood of the Bard filter causing particular complications and Bard's knowledge regarding the likelihood of those complications. With these factual disputes unresolved, the Court cannot grant summary judgment on the issue of punitive damages.

## V.    Conclusion

For the foregoing reasons, the Court will grant summary judgment on the strict liability claims that Plaintiffs have not withdrawn (Counts II and III). The Court will deny summary judgment on Plaintiffs' claims for negligent design (Count IV), negligent failure to warn (Count VII), negligent misrepresentation (Count VIII), fraudulent misrepresentation (Count XII), fraudulent concealment (Count XIII), and loss of consortium (Count XV). The Court will also deny summary judgment on the issue of punitive damages. An appropriate Order follows.[2]

O:\CIVIL 19\19-4170 Maietta v CR Bard\19cv4170 Memorandum re MSJ.docx

---

[2] As stated at the conclusion of oral argument, the Court is aware of pending Daubert motions and motions in limine. These will be ruled upon if the Court's suggestion that counsel and their clients engage the skilled efforts of an experienced mediator does not result in settlement—as has resulted in many other cases coming out of this MDL. A final pretrial conference will be scheduled.